UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

CALIFORNIA DEPARTMENT OF TRANSPORTATION,

    Defendant.
_____/

No. C 09-0437 PJH

**ORDER DENYING MOTION TO DISMISS, MOTION FOR A MORE DEFINITE STATEMENT, AND MOTION TO STRIKE**

The motion of defendant California Department of Transportation ("CalTrans") for an order dismissing the complaint for failure to state a claim, and alternative motion for a more definite statement, and motion to strike, came on for hearing before this court on June 17, 2009. Plaintiff United States of America appeared by its counsel Davis H. Forsythe and Bradley R. O'Brien, and CalTrans appeared by its counsel Janet Wong and Derek S. Van Hoften. Having read the parties' papers and carefully considered their arguments, and good cause appearing, the court hereby DENIES the motions.

**BACKGROUND**

The Presidio of San Francisco ("the Presidio"), which is currently part of the Golden Gate National Recreation Area, was maintained by the United States Army for almost 150 years as a functional installation known as the Presidio of San Francisco Military Reservation.

Established as a military post by Spain in 1776, the Presidio passed into the control of the Republic of Mexico after Mexico declared its independence from Spain in 1821. The United States seized the Presidio in 1846 at the beginning of the Mexican-American War. At the conclusion of the war in 1848, the Treaty of Guadalupe Hidalgo, 9 Stat. 922, provided for the cession of a substantial portion of Mexico's pre-war territory, including present-day California, to the United States.

California was admitted to the Union as a state on September 9, 1850. At that time, the Presidio passed to the State of California without any reservation of federal jurisdiction, although the federal government still owned the property and occupied it as a military reservation. United States v. Watkins, 22 F.2d 437, 438 (N.D. Cal. 1927). In 1897, California ceded to the federal government "exclusive jurisdiction over all lands within this state now held, occupied, or reserved by the government of the United States for military purposes or defense. . . ." Cal. Stats. 1897, ch. LVI, § 1, p. 51; see Standard Oil Co. v. People of State of Cal., 291 U.S. 242, 244 (1934); Watkins, 22 F.2d at 439.

California's cession of "exclusive jurisdiction" in 1897 refers to the United State's Constitution's Federal Enclave Clause, which grants Congress the power to "exercise exclusive Legislation" over "all Places purchased by the Consent of [a State] . . . "for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const., art. I, § 8, cl. 17.

The power to exercise "exclusive legislation" is equivalent to "exclusive jurisdiction." Surplus Trading Co. v. Cook, 281 U.S. 647, 652 (1930). "The cases make clear that the grant of 'exclusive' legislative power to Congress over enclaves that meet the requirements of [the Federal Enclave Clause] by its own weight, bars state regulation without specific congressional action." Paul v. United States, 371 U.S. 245, 263 (1963).

In 1938, the United States Department of War on behalf of the United States Army issued a permit granting the State of California a right of way "for the extension, maintenance and operation of a state road (known as the Funston Avenue approach) on the Presidio of San Francisco Military Reservation." The 1938 permit was issued pursuant

to an Act of Congress approved July 5, 1884.[1]

This road is an extension of what is now Park Presidio Boulevard, part of Route 1, a California Highway. The permit describes the road generally as traveling through the Presidio, and then connecting with "the existing Marina approach to the Golden Gate Bridge, constructed under a permit granted by the Secretary of War to the Golden Gate Bridge and Highway District on February 13, 1931." 1938 Permit, at 1.

Following the legal description of the property right conveyed by the grant of the right of way, the permit provides that

> [t]he limits of the right of way for the said Funston Avenue approach, in lieu of those shown on the said attached plan, shall be the toe of slope in out and top of embankment in fill; the retaining walls parallel to center line at tunnel approaches; the exterior walls of tunnel at the road grade; and the outer railing on top of viaducts; Provided that the width of said right of way shall in no even exceed eighty (80) feet, nor shall said right-of-way include any part of the U.S. Marine Hospital Reservation, San Francisco, California . . . . After completion, the lands over said tunnel and those under viaducts not occupied by support pillars, and such slopes as are shown on the said attached plan or as may be approved by the authorized representative of the Secretary of War, shall be under military control and be used for military purposes.

1938 Permit, at 3.

The following conditions, among others, were attached to the United States' grant of the right of way: the State of California was required to repair, without expense to the United States, any damage "now or hereafter" which "impair[s] the use of land or other property of the United States for national defense or other public purpose." Further, "any damage caused to property of the United States incident to the construction, operation or maintenance of said road" was to be "promptly repaired by the permittee [the State] at its expense to the satisfaction of [the United States]," and the United States would bear no

---

[1] The July 5, 1884 Act of Congress provided, in relevant part, as follows:

The Secretary of War shall have authority, in his discretion, to permit the extension of State, county and Territorial roads across military reservations; to permit the landing of ferries, the erection of bridges thereon; . . . whenever in his judgment the same can be done without injury to the reservation or inconvenience to the military forces stationed thereon.

Act of July 5, 1884, 23 Stat. 104, ch. 214, § 6 (codified at 10 U.S.C. § 1348, repealed 1956).

3

responsibility for "damages to persons or property" arising "incident to the construction, maintenance or operation of said road." 1938 Permit at 5-6, ¶ 12; id. at 6-7, ¶ 18.

In 1994, jurisdiction over the Presidio was transferred from the United States Army to the United States National Park Service. In 1997, in enacting the Presidio Trust Act, 16 U.S.C. § 460bb, Congress created the Presidio Trust, a wholly-owned government corporation. The Presidio Trust assumed jurisdiction over a majority of the Presidio, and the National Park Service retained jurisdiction over the remainder. On January 30, 2009, the United States filed the present action against CalTrans, seeking to recover for damage to Mountain Lake and Lobos Creek, both located within the Presidio.

Mountain Lake, which is included within the Presidio Trust's area of jurisdiction, is located at the southern edge of the Presidio, and is one of the few natural lakes in San Francisco, and the only lake within the Presidio. It is a popular visitor destination, with a variety of natural, cultural, and recreational resources. The United States asserts that CalTrans is liable for damage caused by contaminants (lead, copper, zinc, petroleum hydrocarbons) flowing into Mountain Lake from storm drains built by the State of California as part of the construction of Park Presidio Boulevard.

The United States also alleges that CalTrans is liable for necessary repairs to a degraded pipeline system that carries overflow water from Mountain Lake to San Francisco's sewer system, because the cracked pipelines are allowing contaminated water to flow into Lobos Creek, the main source of drinking water in the Presidio.

The United States asserts five causes of action, each of which alleges a "material breach of the 1938 Agreement." These are (1) failure to repair damage to Mountain Lake caused incident to construction, operation, or maintenance of Park Presidio Boulevard; (2) failure to conduct remedial action and construct drainage facilities as requested by authorized representative of Secretary of Defense; (3) failure to indemnify the Army for claims arising from the construction, operation, and maintenance of Park Presidio Boulevard; (4) failure to maintain Park Presidio Boulevard without expense to Department of Defense; (5) operation and maintenance of Mountain Lake overflow pipeline system in

1  violation of 1938 agreement.  In the prayer for relief, the United States seeks damages, and
2  declaratory and injunctive relief.
3      CalTrans now seeks dismissal of the complaint, or, in the alternative, a more definite
4  statement; and also seeks an order striking the requests for declaratory and injunctive
5  relief.

**DISCUSSION**

7  A.   Legal Standards
8      1.   Motions to Dismiss (12(b)(6))
9      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal
10 sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-
11 1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom Pay
12 Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a
13 motion to dismiss for failure to state a claim, a complaint generally must satisfy only the
14 minimal notice pleading requirements of Federal Rule of Civil Procedure 8.  Rule 8(a)(2)
15 requires only that the complaint include a "short and plain statement of the claim showing
16 that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).
17     Specific facts are unnecessary – the statement need only give the defendant "fair
18 notice of the claim and the grounds upon which it rests."  Erickson v. Pardus, 127 S.Ct.
19 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All
20 allegations of material fact are taken as true.  Id.  However, a plaintiff's obligation to provide
21 the grounds of his entitlement to relief "requires more than labels and conclusions, and a
22 formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic, 550 U.S.
23 at 555 (citations and quotations omitted).  Rather, the allegations in the complaint "must be
24 enough to raise a right to relief above the speculative level."  Id.
25     A motion to dismiss should be granted if the complaint does not proffer enough facts
26 to state a claim for relief that is plausible on its face.  See id. at 558-59.  "[W]here the well-
27 pleaded facts do not permit the court to infer more than the mere possibility of misconduct,
28 the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"

5

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (9th Cir. 2009).

### 2. Motions for a More Definite Statement

Under Federal Rule of Civil Procedure 12(e), a party may move for a more definite statement if the pleading to which the party must respond "is so vague or ambiguous that [the] party cannot reasonably be required to frame a responsive pleading." Motions for more definite statements are disfavored in light of the liberal pleading standards of Rule 8, and should not be granted unless the moving party "literally cannot frame a responsive pleading." Bureerong v. Uvawas, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996).

### 3. Motions to Strike

Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. Id. However, a motion to strike is proper when a defense is insufficient as a matter of law. Chiron Corp. v. Abbot Labs., 156 F.R.D. 219, 220 (N.D. Cal. 1994)

## B. Defendant's Motion

CalTrans argues that the United States is barred from the recovery of money damages because it failed to file a claim as required under the California Tort Claims Act ("CTCA"), California Government Code §§ 900, et seq. CalTrans also asserts that the first, second, third, and fourth causes of action fail to state a claim for breach of contract and declaratory relief; and that the fifth cause of action fails to state a claim because the Mountain Lake Overflow Pipeline System was not part of the 1938 agreement. In the

1 alternative, CalTrans seeks a more definite statement.  Finally, CalTrans argues that the
2 requests for declaratory and injunctive relief should be stricken.

3       1.      Whether the United States is barred from the recovery of money damages

4       The CTCA requires that parties pursuing claims for money or damages against a
5 public entity in California file an administrative claim within either six months or one year of
6 the accrual of the cause of action (depending on the type of claim asserted); and that any
7 civil action must be filed within the usual limitations period, following the date of the denial
8 of the administrative claim.  A party who has not filed a timely administrative claim is barred
9 from filing a civil action.  See Cal. Gov't Code §§ 905.2, 911.2, and 945.4.  These statutes
10 apply to contract actions as well as to tort actions.  See City of Stockton v. Superior Court,
11 42 Cal. 4th 730, 738 (2007).

12       CalTrans argues that the United States cannot proceed with this action because it
13 did not file an administrative claim with the State.  The United States asserts that the CTCA
14 claim filing requirements do not apply in this case.

15       The general rule governing the application of state statutes of limitation in actions
16 involving the federal government is that "the United States is not bound by state statutes of
17 limitation or subject to the defense of laches in enforcing its rights."  United States v.
18 Summerlin, 310 U.S. 414, 416 (1940).  The same rule applies whether the United States
19 brings suit in its own courts or in a state court.  Id.  If a claim has already become infirm by
20 the time the United States acquires the right, however, "the rule of Summerlin will not
21 operate to revive the claim."  Bresson v. C.I.R., 213 F.3d 1173, 1176 (9th Cir. 2000) (citing
22 Guaranty Trust Co. v. United States, 304 U.S. 126, 132-33 (1938)).

23       In United States v. California, 655 F.2d 914 (9th Cir. 1980) ("California I"), the Ninth
24 Circuit distinguished between a "true" state statute of limitations, and a state statute that
25 provides a time limitation as an element of a cause of action or as a condition precedent to
26 liability.  Id. at 918.  The court held that because compliance with California's claim filing
27 statute (the CTCA) was an element of the United States' cause of action against the state,
28 the claim filing statute was not inapplicable to the federal government on the ground that it

was merely a statute of limitations; see also State of California v. Superior Court, 32 Cal. 4th 1234, 1240-43 (2004) (compliance with the CTCA's claim-filing statutes is an element of a plaintiff's cause of action and a mandatory precedent to the maintenance of a cause of action for money or damages against the state).

Eleven years later, in United States v. California, 932 F.2d 1346 (9th Cir. 1991) ("California II"), the Ninth Circuit reiterated that while the United States is normally exempted from state statutes of limitation, "when a claim procedure is a condition precedent to, or an integral element of, a state-created cause of action, the United States is not exempt from the time bar, even if a federal statute of limitations may otherwise apply." Id. at 1351.

The United States Supreme Court subsequently affirmed the Ninth Circuit on the ground that the United States had not acquired "a right free of pre-existing infirmity" prior to the time that the statute of limitations had run. United States v. California, 507 U.S. 747, 758-59 (1993) ("California III"). The Court added, however, that two additional functional considerations govern the application of the Summerlin rule: Summerlin applies when the right at issue was obtained by the government through, or was created by, a federal statute; and when the government is also proceeding in a sovereign capacity. California III, 507 U.S. at 757. Those considerations were not present in California III because the United States' purported right of recovery derived solely from the equitable doctrine of subrogation and from the United States' status as a subrogee. See id. at 757-58; see also Bresson, 213 F.3d at 1178.

Because the above analysis regarding the application of the CTCA is relevant only where state law provides the rule of decision, the question then becomes which law – state or federal – should provide the rule of decision. In California I, the Ninth Circuit noted that when an action is initiated by the federal government under the jurisdictional grant of 28 U.S.C. § 1345, application of state law is not mandated under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). California I, 655 F.2d at 916-17.

The Ninth Circuit also held, however, that where there is "no clear federal law to

8

apply," federal courts should balance the federal interest in carrying out a program in the most efficient and effective manner possible, against the state's interest in the preservation of its control over local interests, particularly traditional interests such as family law and real property transactions, and in preventing the displacement of state law. California I, 655 F.2d at 916-17. In this balancing, the scales should be "weighted in favor of borrowing state law to fashion the federal rules of decision." Id. at 918. On the other hand, "if state law would actually frustrate rather than only hinder a federal program, federal common law must be applied regardless of state interests." Id.

In United States v. Kimball Foods, Inc., 440 U.S. 715 (1979), the United States Supreme Court observed that "[w]hether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy dependent on a variety of considerations always relevant to the nature or the specific governmental interests and to the effects upon them of applying state law." Id. at 728 (quotation and citation omitted). For example, federal programs that by their nature must be uniform in character throughout the nation necessitate the formulation of controlling federal rules, particularly where the application of state law would frustrate specific federal objectives. Id.

More recently, in Boyle v. United Techs. Corp., 487 U.S. 500 (1988), the Supreme Court indicated that federal courts should decline to adopt state law as the rule of decision where the question falls in an area of "uniquely federal interest" and "a significant conflict exists between an identifiable federal policy or interest and the operation of state law . . . or the application of state law would frustrate specific objectives of federal legislation." Id. at 507.

In Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677 (2006), the Court applied the Boyle two-step inquiry, noting that the appropriate inquiry should focus on "whether the relevant federal interest warrants displacement of state law." Id. at 692 (citing Boyle, 487 U.S. at 507 n.3). The Court also noted that the Boyle Court had emphasized that "the involvement of 'an area of uniquely federal interest . . . establishes a necessary, not a sufficient, condition for the displacement of state law,'" and that in some cases, "an

9

'entire body of state law' may conflict with the federal interest and therefore require replacement." Id. at 692 (quoting Boyle, 487 U.S. at 507-08).

Applying this analysis to the present case, the court finds that federal law provides the rule of decision. As an initial matter, the court notes that "[f]ederal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999); see also Smith v. Central Ariz. Water Conservation Dist., 418 F.3d 1028, 1034 (9th Cir. 2005) (state law may apply to interpretation of federal contract in limited circumstances, such as when the United States is not a party, or when the direct interests and obligations of the government are not in question).

While it is true that the Supreme Court commented in Empire (a case in which the United States was not a party) that "uniform federal law need not be applied to all questions in federal government litigation, even in cases involving government contracts," Empire, 547 U.S. at 691, the contract at issue in the present case (in which the United States is a party) was entered pursuant to federal law, and also implicates an area of uniquely federal interest.

The power to release or otherwise dispose of the property of the United States is lodged in the Congress by Article IV, Section 3 of the United States Constitution. Congress' power under the Property Clause is "without limitations." Kleppe v. New Mexico, 426 U.S. 529, 539 (1976). It includes "the power to control their occupancy and use, to protect them from trespass and injury, and to prescribe the conditions upon which others may obtain rights in them . . . ." Utah Power & Light Co. v. United States, 243 U.S. 389, 405 (1917); see also Alabama v. Texas, 347 U.S. 272, 273 (1954) (per curiam).

In the present case, Congress vested complete discretion in the Secretary of War pursuant to the July 5, 1884 Act, to grant a right of way in the form of a state road across the lands of the Presidio, and to impose conditions on the permit granting the right of way. The application of California's claims filing statute would frustrate the specific objectives of the July 5, 1884 Act, and would place a burden on the United States' ability to protect and

maintain federal lands by asserting its property rights under grants such as the right of way in the 1938 permit at issue here.

In addition, compliance with the CTCA's administrative filing requirement would give rise to a "significant conflict" with the clear federal interest in the enforceability of permits issued pursuant to the July 5, 1884 Act, as interpretation of contracts entered into pursuant to the authority granted by in the Act requires a uniform federal practice across the entire United States.

For these reasons, the court finds no basis for dismissal on the ground advanced by CalTrans, and declines to adopt state law as the rule of decision. To the extent that the balancing test set forth by the Ninth Circuit in California I may suggest another outcome, this court has opted to follow the more recent guidance from the Supreme Court in Boyle and Empire. Further, under California III, the court arguably need not reach the balancing test in California I, as the right at issue was created by a federal statute, and the United States is acting in its sovereign capacity in an effort to enforce rights ultimately grounded on federal law. Accordingly, the motion is DENIED, as CalTrans has not established that the United States' failure to file a claim under the CTCA bars it from the recovery of money damages as a matter of law.

    2.    Whether the first, second, third, and fourth causes of action should be dismissed for failure to state a claim.

CalTrans contends that the first, second, third, and fourth causes of action should be dismissed for failure to state a claim because none of them adequately alleges a cause of action for breach of contract or a claim for declaratory relief. CalTrans contends that the repeated allegation that the State "damaged" Mountain Lake is at most a legal conclusion unsupported by the pleading of any facts showing that the State's operation and maintenance of the highway constituted a breach of the agreement; and that the complaint lacks allegations that the State's conduct, consisting of operations of the highway pursuant to the permit/agreement, amounts to wrongful conduct giving rise to a claim for breach.

The motion is DENIED. The court finds that the complaint contains adequate

allegations to satisfy the pleading standards of Rule 8(a). The United States asserts in the complaint that the parties entered into an agreement in connection with the issuance of the permit in 1938; that pursuant to that agreement, CalTrans constructed a roadway through the Presidio; that in building the roadway, CalTrans installed storm drains leading from the roadway to Mountain Lake, which storm drains remain active; that lead, zinc, copper, and other substances have been and continue to be discharged from those storm drains into Mountain Lake; that the Army has determined that discharges from the storm drains have impaired and continue to impair Mountain Lake; that the roadway's drainage system needs to be modified so that further discharges from the roadway are not channeled into Mountain Lake, in order to avoid further damage; and that the Presidio Trust has made a claim against the Army seeking coverage of its costs to remediate contamination of Mountain Lake sediment caused by the discharge of those substances from CalTrans' storm drains.

Taken together, these allegations of fact give CalTrans fair notice of the claim that the United States has suffered "damage" within the meaning of the 1938 agreement, and the grounds upon which that claim rests. The complaint identifies the location where the damage occurred (Mountain Lake), the nature of the alleged damage (introduction of substances including lead, zinc, and copper into one of the few natural lakes in San Francisco), and how CalTrans is alleged to have caused the damage (construction, operation and maintenance of its roadway and storm drains through which the pollutants were and continue to be channeled into Mountain Lake).

       3.     Whether the fifth cause of action should be dismissed for failure to state a claim.

CalTrans asserts that the fifth cause of action fails to state a claim because the Mountain Lake Overflow Pipeline System was not part of the 1938 agreement. As noted above in the "Background" section, the permit described the area granted to the State for the construction of the extension of Park Presidio Boulevard, and stated that "the width of said right of way shall in no event exceed eighty (80) feet, nor shall such right of way include any part of the U.S. Marine Hospital Reservation," and provided further that after

construction, "the lands over said tunnel and those under viaducts not occupied by support pillars, and such slopes as are shown on the said attached plan or as may be approved by the authorized representative of the Secretary of War, shall be under military control and be used for military purposes."

CalTrans contends that because the permit circumscribes the land permitted to the State, which excludes the overflow pipeline system described in the fifth cause of action, there can be no breach of the 1938 agreement related to this system.

The motion is DENIED. The court finds that the United States has adequately put CalTrans on notice of the substance of its claim. Whether CalTrans in fact bears responsibility for the pipeline system is not appropriate for decision on a Rule 12(b)(6) motion.

4.  Whether the court should grant the request for a more definite statement

In the alternative, CalTrans argues, if the court declines to dismiss the complaint for failure to state a claim, it should order the United States to provide a more definite statement. The motion is DENIED, as the court finds that the complaint adequately states a claim.

5.  Whether the requests for declaratory and injunctive relief should be stricken

CalTrans argues that the requests for declaratory and injunctive relief should be stricken because the United States has not established the requisites for the issuance of equitable relief in these circumstances, and because federalism and separation of powers counsel against these remedies.

The court finds that the motion must be DENIED, as it is premature at this stage of the litigation for the court to be considering what type of relief, if any, the United States may be entitled to. As for the merits of the parties' arguments, the court agrees with the United States that it has adequately pled facts showing an entitlement to declaratory and injunctive relief, and at this stage, that is all it needs to do.

13

**CONCLUSION**

In accordance with the foregoing, the court DENIES the motion to dismiss, the alternative motion for a more definite statement, and the motion to strike.

**IT IS SO ORDERED.**

Dated:  July 16, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge